

FILED
AUG - 9 2006
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY ____ Deputy Clerk

ENTERED
AUG 1 0 2006
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY ____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

In re

WILLIAM E. HANSON and
SHARON D. HANSON,

Debtors.

Case No.   SA 05-16710 TA

Chapter   13

**MEMORANDUM OF DECISION ON MOTION FOR ORDER DIRECTING TRUSTEE TO PAY OVER TO DAVID DOBBS THE MONEY DUE HIM**

Date:    July 26, 2006
Time:    10:00 a.m.
Courtroom:  5B

This is the motion of judgment creditor David Dobbs directing the Chapter 13 Trustee to pay over to him the amount of his judicially determined lien from remaining proceeds after close of escrow in the sale of the property commonly known as 66 Coral Lake, Irvine ("the property"). This sale was approved upon motion of the Debtors under 11 U.S.C. § 363(f) with liens attaching to proceeds.

Earlier, the Court on June 20, 2006 had heard Debtors' motion under 11 U.S.C. Section 522(f) to avoid the Dobbs lien as impairing the Debtors' homestead. The Court

1

determined that the Dobbs lien would be avoided to the extent that it exceeded $252,008.56, as reflected in the court's order entered July 7, 2006. This determination was made as follows: **1.** The senior mortgage was found to have had a balance of $397,718 as of the petition date; **2.** The first judgment lien was found to have had a balance of $12,566.07 as of the petition date; **3.** The property was found to have had a fair market value of $815,000 as of the petition date; and **4.** The Debtors claimed a $150,000 exemption, which was not contested. As guided by the statute and established law, the Court added the amounts of the senior, unavoidable liens (including a $2,707.37 tax lien) plus the $150,000 homestead, and the sum of these numbers ($562,991.44) was then subtracted from the determined fair market value as of the petition date, $815,000. The resulting number was **$252,008. 56**, which is the amount of the Dobbs lien *not avoided* because it did not impair the homestead under this formula ("remaining Dobbs lien").

There are not enough proceeds left after senior liens and various and sundry costs of escrow to pay both the full exemption and the full amount of the remaining Dobbs lien. This should not surprise anyone. Upon review of the closing statement, Exhibit "2" to the Debtors' opposition papers, it develops that the amount of the first mortgage payoff to Countrywide was actually $429,307.71, *an increase of $31,589 from the amount determined as of date of petition.* Why this lien is so much higher is not clarified, but if it is, as the Court believes, because the mortgage has not been regularly paid then certainly Debtors cannot expect someone else to have paid for this. Similarly, there is a $48,000 broker's commission, and over $6,400 in other sundry costs deducted from proceeds, which were never calculated when the amount of the remaining Dobbs lien

was determined in the section 522(f) motion. The motion at bar highlights a basic issue. Who pays for costs of sale and post petition changes in the amounts of senior liens, the homestead or the unavoidable portion of the judgment lien after a section 522(f) order? Since the determination of senior amounts and the unavoidable portion of a target lien are all determined under section 522(f) *as of the petition date,* See, 11 U.S.C. § 522(a)(2); *In re Goswami*, 304 B.R. 386, 391-92 (9th Cir. BAP 2003), it is inevitable that the actual amounts paid in a later sale will differ, but the question is, who bears the risk of these changes?

The Court concludes that it is the exemption that must absorb these costs. First, the definition of what is meant by a lien "impairing" an exemption found at 11 U.S.C. 522(f)(2)(A) addresses other liens and the amount of the debtor's exemption, but notably absent is any reference to costs of sale or post determination changes in the amount of senior liens. In other words, at a fixed point in time liens are avoided to the extent they impair *exemptions*, not to the extent they impair exemptions *and possible future costs of sale*. Second, there is ample case law which forbids the Court from considering costs of sale when determining "fair market value" in the context of a section 522(f) motion. *See, In re Nellis,* 12 B.R. 770, 773 (Bankr. Conn. 1981); *In re Clendennen*, 67 B.R. 909 (Bankr. W.D. Pa. 1986); *In re Anderson*, 68 B.R. 313,314 (Bankr. W.D. Pa. 1986); *In re Richardson*, 280 B.R. 717 (Bankr. S.D. Ala. 2001.) It must logically follow, then, that the resulting number for the unavoidable portion of an involuntary lien must be somewhat larger than would be yielded upon immediate sale if costs of sale are also deducted from the lien. To nevertheless deduct costs of sale then from the lien is illogical. Stated differently, leaving the exemption untouched despite the incurrence of costs of sale or

3

other deductions would only make sense *if these items could be considered in the initial analysis.* Third, logic dictates that since it is the exemption (or to the Debtors beyond their exemption) that would enjoy any post determination appreciation of the property, *See, Anderson*, 68 B.R. at 314, it is also the exemption which should suffer any post determination depreciation or changes in the amounts of senior liens. It also follows that costs of sale should be absorbed by the exemption since it is the debtor who decides when, or if, any sale of the property is to occur, and at what price, and/or whether a broker is to be retained and on what terms. To attempt a determination under section 522(f) that would fix the exemption but leave all these other potential deductions and variables such as hypothetical costs of sale or changes in the amount of senior liens in flux, would be illogical and unwieldy. Lastly, to the extent the diminishment of the proceeds remaining is attributable to the Debtors' failure to service their mortgage, they have no one to blame but themselves for this result. Certainly they cannot reasonably expect that their secured creditor should, effectively, pay their costs of occupancy by paying the full amount of an exemption from the diminished proceeds left after the enlarged senior is paid in full.

Debtors' citation to *Bernstein v. Pavich (In re Pavich)*, 191 B.R. 838 (Bankr. E.D. Ca. 1996), is not persuasive. *Pavich* did not involve a judicially determined amount of lien after section 522(f) motion. Rather, *Pavich* involved a priority dispute between claimants over proceeds remaining after the court had ordered a sale free of liens with liens attaching to remaining proceeds. The *Pavich* court never fully explains the general proposition stated in its opinion that exemptions are paid before involuntary liens and therefore judicial liens cannot "impair" a homestead. *Id.* at 846. Of course, involuntary

4

liens *would* impair homestead exemptions in certain circumstances as is discussed in many cases. See, *In re Patterson*, 139 B.R. 229, 231 (9th Cir. BAP 1992); *In re Kruger*, 77 B.R. 785, 788 (Bankr. C.D. Cal. 1987). To suggest otherwise would be to render section 522(f) unnecessary in most cases involving residential real estate. The reliance of the *Pavich* court on *In re Chabot*, 992 F. 2d 891 (9th Cir. 1993) exposes the dubious reliability of *Pavich* as precedent. The holding of *Chabot*, i.e., that judgment liens do not even attach to the extent there is <u>no</u> equity above declared homestead exemptions is factually distinguishable. Here we have an "automatic" homestead, not a declared homestead, and clearly here some of the Dobbs lien must have attached since the senior liens plus the full homestead did not fully eclipse the property value. Moreover, the *Chabot* holding that post-petition appreciation would inure to the benefit of avoided liens, has been challenged as having been overruled by changes in the Code. See, *In re Nielson*, 197 B.R. 665, n. 3 (9th Cir BAP 1996). The other cases cited in *Pavich*, such as *In re Galvan*, 110 B.R. 446 (9th Cir. BAP 1990), *overruled by In re Chabot*, 992 F.2d 891 (9th Cir. 1993), *overruled by* 1994 Bankruptcy Reform Act 303 and *In re Patterson*, 139 B.R. at 231 do not cast light on our issue because they do not discuss the pivotal issues of costs of sale or accruing charges on senior liens. However, the methodologies described in those cases for a section 522(f) determination are in all ways consistent with this Court's approach herein. Moreover, the reference by the *Pavich* court to judicial liens is largely *dicta* since the *Pavich* court went on to hold that certain tax liens would be paid in any event eclipsing the exemption. *Pavich*, 191 B.R. at 847. In sum, there is nothing about *Pavich* which can overcome the clear weight of authority and common sense as described hereinabove.

5

At the hearing there was argument to the effect that under CAL. CIV. PROC. § 701.850, full homestead exemptions plus all existing encumbrances are paid by the levying officer. Therefore, Debtors argue, the Court should order payment in full of their homestead exemption before the remaining Dobbs lien because, for purposes of homestead exemptions, bankruptcies are treated as involuntary sales. *See, In re Pike*, 243 B.R. 66, 70 (9th Cir. BAP 1999).

First, CAL. CIV. PROC. § 701.850 cannot be read as Debtors have suggested. At most, it could be argued that under California law, homestead properties cannot be sold by the levying officer *at all* unless at a price sufficient to clear *all* liens and encumbrances *plus* the homestead. *See*, CAL. CIV. PROC. §§ 704.760, 704.780 and 704.800.

Debtors are mixing figurative "apples and oranges." While the petition is indeed treated as the equivalent of a forced sale for limited purposes of determining that California's automatic homestead exemption applies, it does not follow that California's protection against involuntary sale should also apply insofar as homestead exemptions thereunder must emerge unscathed. No case law suggests that the operation of the bankruptcy must exactly mimic the operation of a hypothetical sheriff's sale under California law. This pushes the analogy to an involuntary sale too far. Nor is the analogy a logical one, as there is no assurance that the costs of sale through an escrow, such as in the case at bar, would be anywhere near the same as the reimbursement of the costs of a levying officer as referenced at CAL. CIV. PROC. § 704.850(a)(3). Further, the analogy to a sheriff's sale becomes even more remote since the California Code of Civil Procedure scheme suggests that accruing amounts under the senior lien must not be allowed to become a major factor since sales can only be ordered in the first place where

all liens and encumbrances plus the full exemption do not exceed the expected price. See, CAL. CIV. PROC. §§ 704.750 - 704.800.

Moreover, section 522(f) is designed to deal with realities of the petition having actually been filed. It therefore no longer makes any sense to further analogize the petition to a sheriff's sale under a state statute that would not have allowed the sale at all under the facts of this case where liens and encumbrances, plus the full exemption, exceeded the value of the property. Instead, section 522(f) is designed to do what no state statute can do, that is, to bifurcate liens that impair homesteads and retain only that part that does not impair the exemption. Nor does it follow that a sale conducted in bankruptcy, or after the bankruptcy has been pending many months, should be treated as a *second* forced sale, particularly where, as here, the Debtors *have already had one determination of their exemption*. Instead, it is more logical under section 522(f), and consistent with case law, that the petition is the "forced sale" since all values and lien amounts are examined as of that date. That is as far as the analogy can go. The amount of an involuntary lien impairing the homestead is adjusted as of that date and only the portion of the target lien after the senior liens plus the homestead remains as of the petition date. It is then totally illogical to again readjust the lien just because Debtors decide to sell their residence months or even years later, particularly where, as here, all of the senior amounts have changed, the price has changed, and the additional factor of costs must be dealt with.

In effect, once the section 522(f) determination was made this case became no different than if the amount of the lien were $252,008.56 and *voluntary* in nature (and thus not further avoidable as impairing the homestead). Once the section 522(f)

7

determination is made, the target lien should not equitably be subjected to repeated examination, particularly where, as here, it is the Debtors' decision not to service the senior mortgage yet remain in residence and where the sale is conducted only for the benefit of the Debtors. In such a case of a voluntary lien there could be no reasonable argument that the lienor should be made to absorb the costs of sale or any of the other charges involved here.

*Grant motion instructing Trustee to remit full amount of Dobbs lien, $252,008.56.*

DATED: AUG - 9 2006

_____
HONORABLE THEODOR C. ALBERT
United States Bankruptcy Judge

## NOTICE OF ENTRY OF JUDGMENT OR ORDER

## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

You are hereby notified that a judgment or order entitled MEMORANDUM RE MOTION FOR ORDER DIRECTING TRUSTEE TO PAY OVER TO DAVID DOBBS THE MONEY DUE HIM: was entered on _____.

I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on _____.

Clark D. Nicholas
Attorney at Law
1800 Gathe Drive
San Luis Obispo, CA 93405

Arnold H. Wuhrman, Attorney
SERENITY FINANCIAL SERVICES
28871 Hedgerow
Mission Viejo, CA 92692

Bruce David White, Esq
White & Roseman
1201 Dove Street, Suite 480
Newport Beach, CA 92660

Amrane Cohen
Chapter 13 Trustee
770 The City Drive South, Suite 3300
Orange, CA 92868

William E. Hanson
Sharon D. Hanson
66 Coral Lake
Irvine, CA 92614

Office of the United States Trustee
411 W. Fourth Street, Suite 9041
Santa Ana, CA 92701

DATED

By _____
       Clerk

# NOTICE OF ENTRY OF JUDGMENT OR ORDER

## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

You are hereby notified that a judgment or order entitled MEMORANDUM RE MOTION FOR ORDER DIRECTING TRUSTEE TO PAY OVER TO DAVID DOBBS THE MONEY DUE HIM: was entered on AUG 1 0 2006.

I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on AUG 1 0 2006.

Clark D. Nicholas
Attorney at Law
1800 Gathe Drive
San Luis Obispo, CA 93405

Bruce David White, Esq
White & Roseman
1201 Dove Street, Suite 480
Newport Beach, CA 92660

Amrane Cohen
Chapter 13 Trustee
770 The City Drive South, Suite 3300
Orange, CA 92868

Office of the United States Trustee
411 W. Fourth Street, Suite 9041
Santa Ana, CA 92701

Arnold H. Wuhrman, Attorney
SERENITY FINANCIAL SERVICES
28871 Hedgerow
Mission Viejo, CA 92692

William E. Hanson
Sharon D. Hanson
66 Coral Lake
Irvine, CA 92614

DATED    AUG 1 0 2006

By _____
Clerk